

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03 CR 90 |
| | ) | |
| FERNANDO DELATORRE, also known as "Fern," Fern-dog," and "Fernwood," BOLIVAR BENABE, also known as "Jap," JUAN JUAREZ, also known as "Ghost," JULIAN SALAZAR, also known as "Mando," "Comrade," "Conrad," Cuz," and "Cuzzo," MIGUEL MARTINEZ, also known as "Big Mike" and "Mizzy," MARIANO MORALES, also known as "Mar," ARTURO BARBOSA, also known as "Chipmunk," HAROLD CROWDER, also known as "H-Man," MIGUEL RODRIGUEZ, also known as "Mental" and "Mento," STEVEN PEREZ, also known as "Frantic" and "Big Frantic," BRIAN HERNANDEZ, LIONEL LECHUGA, ROMEL HANDLEY, also known as "Romellie," CHRISTIAN GUZMAN, also known as "Mousey," AKEEM HORTON, and STEVEN SUSINKA, | ) | Judge Ruben Castillo |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is the first opinion that this Court has issued in this challenging criminal case which is representative of the Department of Justice's efforts to move serious street crimes into federal court. In a Second Superseding Indictment ("Indictment"), the Government charged sixteen defendants—all allegedly members of the Insane Deuce Nation Street Gang ("Insane Deuces")—with a number of crimes. Count One alleges that each defendant conducted and participated in the conduct of the affairs of the Insane Deuces through a racketeering conspiracy,

in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d).[1] In the Government's "notice of special findings & enhanced sentencing as to the racketeering conspiracy" in Count One, the Government alleges that the following defendants "committed and caused to be committed" the following violent crimes: (1) the attempted murder of Victim A by Juan Juarez, Julian Salazar, Miguel Martinez, Steven Perez, Brian Hernandez, and others; (2) the attempted murder of Victim B by Juarez, Salazar, Martinez, Perez, Hernandez, and others; (3) the murder of Robert Perez by Fernando Delatorre, Juarez, Salazar, Martinez, Harold Crowder, Steve Susinka, and others; (4) the murder of David Lazcano by Delatorre, Bolivar Benabe, Juarez, Salazar, Martinez, Mariano Morales, Arturo Barbosa, Christian Guzman, and others; (5) the attempted murder of Victim C by Delatorre, Benabe, Juarez, Salazar, Martinez, Morales, Barbosa, Guzman, Akeem Horton, and others; (6) the attempted murder of Victim D by Delatorre, Benabe, Juarez, Martinez, Morales, Barbosa, and others; (7) the murder of David Morales by Delatorre, Benabe, Juarez, Salazar, Martinez, Morales, Barbosa, Horton, Co-conspirator B, and others; (8) the murder of Urbel Valdez by Delatorre, Benabe, Juarez, Salazar, Martinez, Morales, Barbosa, Co-conspirator B, and others; (9) the attempted murder of Victim E by Benabe, Juarez, Salazar, Martinez, Morales, Barbosa, Perez, and others; and (10) drug trafficking by Delatorre, Benabe, Juarez, Salazar, Martinez, Morales, Barbosa, Miguel

---

[1] Section 1962(d) states that it shall be unlawful for any person to conspire to violate subsections (a) through (c) of section 1962, which prohibit any person associated with any enterprise engaged in activities that affect interstate or foreign commerce, to participate in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. It further prohibits any person from using any income derived from a pattern of racketeering activity in furtherance of such an enterprise. "Racketeering activity" means any act or threat involving murder, kidnapping, gambling, arson, robbery, or dealing in a controlled substance or listed chemical, as well as several other indictable offenses. 18 U.S.C. § 1961.

Rodriguez, Susinka, Brian Hernandez, Lionel Lechuga, Horton, and others.

Counts Two through Eight of the Indictment allege that various defendants committed the following violent crimes in aid of the racketeering activity under 18 U.S.C. § 1959(a):[2] (1) Count Two accuses Delatorre and Guzman of the murder of David Lazcano; (2) Count Three accuses Salazar of conspiracy to murder Victim F; (3) Count Four accuses Juarez, Salazar, Morales, and Barbosa of conspiracy to murder Victim G; (4) Count Five accuses Delatorre, Guzman and Horton of assault with a dangerous weapon upon Victim C; (5) Count Six accuses Delatorre and Horton of the murder of David Morales; (6) Count Seven accuses Delatorre of the murder of Urbel Valdez; and (7) Count Eight accuses Perez with assault with a dangerous weapon upon Victim E.

The indictment further charges the defendants with drug trafficking as follows: (1) Count Nine accuses Delatorre, Benabe, Juarez, Salazar, Martinez, Morales, Barbosa, Rodriguez, Hernandez, Lechuga, Horton, and Susinka of conspiracy to distribute and possess with intent to distribute certain controlled substances, including crack cocaine, cocaine, and marijuana; (2) Counts Ten and Eleven accuse Martinez of knowingly and intentionally distributing cocaine; (3) Count Twelve accuses Delatorre of knowingly and intentionally distributing crack cocaine; (4) Count Thirteen accuses Delatorre of possession of a firearm; and (5) Counts Fourteen and Fifteen

---

[2]Section 1959(a) states that whoever, as consideration for the receipt of, or a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in such an enterprise, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished according to subsections (1) through (6), depending on the nature of the violent crime.

3

accuse Benabe of possession of firearms in and affecting interstate commerce.

The following discovery motions and motions for a bill of particulars are pending: Salazar's motion for a bill of particulars, Fifth and Sixth Amendment Notice, and Disclosure of *Brady* Material, (R. 213); Benabe's motions for discovery and for a bill of particulars, (R. 202, 204); Delatorre's motions for disclosure of favorable evidence and for discovery regarding expert witnesses, (R. 154, 155); Crowder's motion for a bill of particulars and application for pre-authorization discovery of information relevant to the decision by the Department of Justice whether or not to authorize the U.S. Attorney to seek death, (R. 193, 194); and Perez's motions for disclosure of favorable evidence, to produce a witness list, for disclosure of promises of immunity, and to produce *Santiago* memorandum discovery, (R. 162-166). The Government filed a consolidated response to these motions, (R. 215),[3] and Benabe filed a reply, (R. 225). On November 30, 2005, this Court ordered that any motion filed shall apply to all defendants. (R. 125.) As the decision to seek the death penalty remains within the discretion of the Government, this Court's rulings on the pending discovery motions will apply to all of the defendants.

## 1. Bill of Particulars

The trial court has the discretion to grant or deny a motion for a bill of particulars under Federal Rule of Criminal Procedure 7(f). *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003). The trial court can deny a bill of particulars where the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to

---

[3] The Government earlier filed a separate response to Delatorre's motion for discovery regarding expert witnesses and motion for disclosure of favorable evidence. (R. 189-90.) The Government's earlier arguments are completely incorporated into their consolidated response, and thus these earlier briefs need not be considered separately.

4

prepare for trial. *Id.* An indictment which includes each of the elements of the offense charged, the time and place of the accused's conduct which constituted a violation, and a citation to the statute or statutes violated sufficiently apprises the defendant of the charges. *Id.*

"[A]ny fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 475-76 (2000) (citing *Jones v. United States*, 526 U.S. 227 (1999)); *see also Ring v. Arizona*, 536 U.S. 584, 602 (2002) (extending rule to cases where penalty may be increased to that of death). In a case where the Government may seek the death penalty, the indictment thus must charge at least one statutory aggravating factor—in essence, an element of the offense—necessary to elevate the maximum sentence from life imprisonment to death. *See United States v. Brown*, 441 F.3d 1330, 1367 (11th Cir. 2006); *United States v. Allen*, 406 F.3d 940, 942-43 (8th Cir. 2005); *United States v. Higgs*, 353 F.3d 281, 297-98 (4th Cir. 2003). Some circuits indicate that the indictment must allege all statutory aggravating factors the Government intends to prove to render a defendant eligible for the death penalty. *United States v. Frye*, 372 F.3d 729, 733-34 (5th Cir. 2004); *United States v. Quinones*, 313 F.3d 49, 53 (2d Cir. 2002).

The Government lists the following statutes allegedly violated by the defendants: 18 U.S.C. §§ 1959, 1962(d) (RICO); 21 U.S.C. §§ 841, 846 (drug offenses and penalties); and 18 U.S.C. §§ 922(g)(1), (k) (illegal transport of firearms). The Government brings all of its charges of violent crimes and conspiracy under RICO, which provides for the possibility of a death sentence where a member of an enterprise engaged in racketeering activity commits murder as consideration for something of value or to gain entrance to or maintain or increase his position in

Case: 1:03-cr-00090 Document #: 241 Filed: 06/07/06 Page 6 of 16 PageID #:721

the enterprise. 18 U.S.C.A. § 1959 (a)(1). The possession of firearms charges against Delatorre and Benabe may be punishable by death if death results from the use of such munitions by a person in furtherance of any crime of violence or drug trafficking crime. 18 U.S.C.A. § 924 (c)(1)(A). The Controlled Substances Act, 21 U.S.C. § 848, provides for the death penalty if any person working in furtherance of a continuing criminal enterprise, or engaged in manufacturing, distributing, or dispensing, or possessing with intent to manufacture, distribute, or dispense, "intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results." 21 U.S.C. §§ 841(b), 848(e).

In the Government's RICO counts—Counts One through Eight—the Government only charges three defendants—Delatorre, Guzman, and Horton—of murder, the only RICO crime punishable by death. However, in the RICO conspiracy count—Count One—the Government summarily alleges that ten of the remaining defendants—Benabe, Martinez, Crowder, Hernandez, Susinka, Salazar, Juarez, Morales, Barbosa, and Perez—"committed or caused to be committed" certain murders or attempted murders. Defendants Rodriguez and Lechuga are only implicated in drug trafficking counts, but the Government does not allege that any of the alleged drug trafficking crimes resulted in killings. The Government also does not tie Delatorre's and Benabe's possession of firearms charge to specific killings. Moreover, the Government does not link any specific criminal acts to the remaining defendant, Romel Handley, who is summarily described as: "a Shorty member of the Insane Deuces" who directed other members of the enterprise in carrying out unlawful activities in furtherance of the conduct of the affairs of the Insane Deuces and as part of the racketeering conspiracy.

Based on these summary allegations, the Government has indicated that it may seek the

death penalty against at least seven defendants.[4] In any criminal indictment, especially those that may result in the most severe penalty of death, such summary allegations do not suffice. Unlike *Fassnacht*, the Indictment here does not set forth the times and places of each of the accused's conduct that constitutes a violation. In addition, the Indictment fails to set out a minimum of one statutory aggravating factor which is necessary to elevate the maximum sentence from life imprisonment to death. *See Brown*, 441 F.3d at 1367; *Allen*, 406 F.3d at 942-43; *Higgs*, 353 F.3d at 297-98; *see also Frye*, 372 F.3d at 733-34 (holding that indictment must allege all statutory aggravating factors the Government intends to prove to render the defendant eligible for the death penalty); *Quinones*, 313 F.3d at 53 (same). The Indictment's conclusory allegations that the murders were "accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty" under the section entitled "Notice of Special Findings & Enhanced Sentencing as to the Racketeering Conspiracy," do not satisfy the requirement to include at least one statutory aggravating factor in the indictment. Although a "heinous, cruel, or depraved manner" of committing an offense is a statutory aggravating factor (18 U.S.C. § 3592(c)(6)),[5] the

---

[4]The Government has represented that the seven defendants against which it may seek the death penalty are: Delatorre, Benabe, Salazar, Crowder, Guzman, Horton, and Susinka.

[5]Other statutory aggravating factors for homicide include: (1) death during commission or attempted commission of another crime; (2) previous conviction of a violent felony involving firearm; (3) previous conviction of an offense for which a sentence of death or life imprisonment was authorized; (4) previous conviction of other serious offenses; (5) grave risk of death to additional persons; (6) heinous, cruel, or depraved manner of committing an offense; (7) procurement of offense by payment; (8) pecuniary gain from the offense; (9) substantial planning and premeditation; (10) conviction for two felony drug offenses; (11) vulnerability of victim; (12) conviction for serious federal drug offenses; (13) continuing criminal enterprise involving drug sales to minors; (14) the offense was committed against high public officials; (15) prior conviction of sexual assault or child molestation; (16) multiple killings or attempted killings. 18 U.S.C.A. § 3592 (c).

indictment does not specify the role played by ten of the thirteen defendants alleged to have "committed or caused to be committed" certain murders or attempted murders—Benabe, Martinez, Crowder, Hernandez, Susinka, Salazar, Juarez, Morales, Barbosa, and Perez.

The Government's argument in open court that the aggravating factors were "clearly work product and internal deliberative process," to which the defendants are not entitled, is unavailing. (5/24/06 Tr. at 5.) In accordance with the statute and case law set out above, the Government—without producing work product—shall produce a bill of particulars setting forth the times and places of each of the accused's conduct that constitutes a violation of the alleged statutes and stating at least one statutory aggravating factor that would elevate the maximum sentence for each defendant from life imprisonment to death.

## II. Defendants' Discovery Requests

In addition to requesting a bill of particulars, the defendants have made several discovery requests. Each of these discovery motions, except for those by defendant Perez,[6] seek "pre-authorization" discovery; that is, discovery that will assist the defendants in convincing the United States Attorney ("U.S. Attorney") and the Attorney General ("AG") not to authorize the Government to seek the death penalty against them. The Government argues that the defendants' discovery requests are premature because the Government has not yet determined whether to seek the death penalty. In addition, the Government claims that it need not provide discovery to assist the defendants in persuading the Death Penalty Committee not to seek the death penalty because the United States Attorneys' Manual ("USAM")—which sets out the guidelines for

---

[6]While Perez seeks discovery before any death penalty authorization is made, he did not tie his motions to the need to prepare for arguing against a death penalty decision.

8

seeking the death penalty—does not create enforceable rights. This Court disagrees.

In deciding whether to seek the death penalty, the Government is guided by the internal policies and procedures in the USAM. *See* USAM § 9-10.000 *et seq.* (1997). Under these guidelines, when a U.S. Attorney charges a defendant with an offense subject to the death penalty, the attorney must submit a death penalty evaluation form and a prosecution memorandum to the Attorney General's Death Penalty Committee, which assists the Attorney General in deciding whether to seek the death penalty in a certain case. *Id.* §§ 9-10.040, 9-10.050, 9-10.070. The guidelines require the U.S. Attorney to submit these documents no later than thirty days before the Government must file its "Notice of Intention to Seek the Death Penalty." *Id.* § 9-10.040.

Next, a meeting is held at which the defendant is given an opportunity—orally or in writing—to persuade the Death Penalty Committee not to seek the death penalty. *Id.* § 9-10.050. Finally, the Committee makes a recommendation to the Attorney General, who makes the decision whether to seek the death penalty in a particular case. *Id.* Once the Attorney General decides to seek the death penalty, the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 *et seq.*, applies. Under the FDPA, the Government must notify the defendant in "a reasonable time before trial" of its intent to seek the death penalty and all aggravating factors that it "proposes to prove as justifying a sentence of death" if the defendant is convicted of the underlying offense. 18 U.S.C. §§ 3593(a)(1-2). The FDPA creates enforceable, substantive, or procedural rights for criminal defendants; the USAM, on the other hand, does not. *See United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005); *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000); *United States v. Blackley*, 167 F.3d 543, 548-49 (D.C. Cir. 1999); *In re United States*, 197 F.3d

9

310, 315-16 (8th Cir. 1999); *United States v. Myers*, 123 F.3d 350, 356 (6th Cir. 1997); *United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir.1994); *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990).

Even though the USAM does not create substantive rights, however, the defendants still have a right to discovery in this case. District courts have broad discretion with regard to discovery motions in criminal cases. *United States v. Washington*, 318 F.3d 845, 857 (8th Cir. 2003); *Perez*, 222 F. Supp. 2d at 168-69 (noting that a district court has inherent authority to manage its docket and supervise the orderly disposition of criminal matters). Several district courts have allowed discovery before the Government has made a final decision regarding whether to seek the death penalty; *i.e.*, pre-authorization discovery. *See United States v. Perez*, 222 F. Supp. 2d 164, 168-69 (D. Conn. 2002); *United States v. Karake*, 281 F. Supp. 2d 302, 306 (D.D.C. 2003); *United States v. Diaz*, No. 05 CR 0167, 2005 WL 1575191, at *10-11 (N.D. Cal. June 30, 2005); *United States v. Jackson*, No. 02 CR 756, 2003 WL 22023972, at *3 (S.D.N.Y. Aug. 27, 2003).[7] These courts have ordered discovery produced subject to immediate disclosure to be used in defense counsels' arguments against pursuit of the death penalty to both the United

---

[7]Some courts, however, have denied pre-authorization discovery as premature because the Government has not yet determined whether or not it will seek the death penalty in the event of a conviction. *United States v. Bodkins*, No. 04 CR 70083, 2004 WL 2491615, at *3 (W.D. Va. Nov. 5, 2004) (denying the defendants' motions for pre-authorization discovery because the USAM describes only the internal administrative process concerning whether to seek capital punishment in this case and creates no discovery rights for a defendant or his attorneys); *United States v. Martinez-Martinez*, No. 01 CR 307, 2001 WL 1287040, at *7 (S.D.N.Y. Oct. 24, 2001) (denying the defendant's motion for pre-authorization notice of aggravating factors because the Government had not yet determined whether or not it would seek the death penalty in the event of a conviction); *United States v. Shakir*, 113 F. Supp. 2d 1182, 1187-88 (M.D. Tenn. 2000) (denying the defendants' motions for pre-authorization discovery because the Court lacks jurisdiction to order pre-authorization discovery).

10

States Attorney and the Department of Justice. This Court agrees that "[t]he exigencies of capital litigation compel, as a practical matter, in order to ensure the fair and orderly disposition of the case, prompt disclosure of all information which will affect the choice of penalty." *Diaz*, 2005 WL 1575191, at *10-11. As several defendants here are presently subject to a possible sentence of death, this warrants especially careful treatment as capital punishment is qualitatively different than any other form of punishment. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *Gregg v. Georgia*, 428 U.S. 153, 187 (1976); *Caldwell v. Mississippi*, 472 U.S. 320, 323 (1985) (noting heightened need for reliability in death penalty case). Therefore, this Court finds that defendants are entitled to discovery as set out below.

## IV. Scope of Discovery

### A. *Brady* Discovery

The defendants seek discovery under *Brady v. Maryland*, 373 U.S. 83 (1963). The district courts that have allowed pre-authorization discovery have held that this discovery includes the Government's obligations under *Brady*. *Perez*, 222 F. Supp. 2d at 168-69; *Jackson*, 2003 WL 22023972, at *3; *Diaz*, 2005 WL 1575191, at *10-11; *Karake*, 281 F. Supp. 2d at 306 ("The Government wisely does not contest the application of *Brady* at this stage of the proceedings to the statutory mitigating factors."). This Court agrees. Under *Brady*, the Government has a duty to disclose evidence favorable to the defense (either exculpatory or that which could be used for impeachment) where such evidence is material either to guilt or punishment. *United States v. Knight*, 342 F.3d 697, 705 (7th Cir. 2003). Evidence of aggravating and mitigating factors need not be admissible under the rules of evidence. *United States v. Johnson*, 223 F.3d 665, 674 (7th Cir. 2000). Statutory mitigating factors include where

11

the defendant: is punishable as a principle in an offense committed by another; could not reasonably have foreseen that his conduct in the course of commission of murder would cause or create a grave risk of causing death; lacked a significant prior criminal record; committed the offense under severe mental or emotional disturbance; and was as equally culpable as another defendant or defendants who will not be punished by death. 18 U.S.C. § 3592; 18 U.S.C. § 848(m). Evidence of the victims' participation in the activities of a rival gang will also be considered. *Id.* Other *Brady* material may include information regarding the involvement of others, uncharged conduct, conduct of the victims, others' motives, others' death-eligible conduct, others' uncharged bad acts, impeaching information such as criminal histories and benefits accorded to cooperating persons, and mental state information that is relevant to the penalty phase. *Diaz*, 2005 WL 1575191, at *10-11.

### B. Rule 16 Discovery

The Government also must meet its discovery obligations under Federal Rule of Criminal Procedure 16. Rule 16 establishes "the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." Advisory Committee Note to Fed. R. Crim. P. 16. Under Rule 16, [u]pon a defendant's request, the Government must disclose and/or furnish to the defendant: (A) the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a Government agent if the Government intends to use the statement at trial; (B) any relevant written or recorded statement by the defendant within the Government's possession, custody, or control, including the defendant's recorded testimony before a grand jury relating to the charged offense, and written records of oral

statements to a known Government agent; (D) a copy of the defendant's prior criminal record that is within the Government's possession, custody, or control; (E) any material document or tangible object within the Government's possession, custody, or control that is material to preparing the defense or that was obtained from or belongs to the defendant; (F) any material results or reports of a physical or mental examination and of any scientific test or experiment if within the Government's possession, custody, or control; and (G) a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.

### C. Exceptions to Disclosures

Even courts allowing pre-authorization discovery, however, exclude certain material from discovery. First and foremost, courts make exceptions to discovery when there is a specific showing of risk to potential witnesses. *See, e.g., Diaz*, 2005 WL 1575191, at *10-11; *Perez*, 222 F. Supp. 2d at 171-72. This exception accords with this Circuit's practice of allowing the Government to withhold the name of a Rule 404(b) witness (as to other crimes, wrongs, or acts of the defendant) if there are rational fears that the witness will be harmed or intimidated until the eve of testimony or trial. *United States v. Edwards*, 47 F.3d 841, 842-43 (7th Cir. 1995). Furthermore, neither the Constitution nor Rule 16 requires pretrial disclosure of prosecution witnesses. *Edwards*, 47 F.3d at 843. As in *Edwards*, this Court will not yet require the Government to identify its witnesses because a trial date has yet to be set, and no final decision has been made regarding whether the Government intends to seek the death penalty. *Id.* This Court, however, retains the power to order the witness list produced "to assure the proper and orderly administration of criminal justice." *Id.*

In addition, the Government may withhold material subject to the work product privilege and the deliberative process privilege. The work product privilege may apply to discussions between prosecutors and investigating agents, and the deliberative process privilege covers memoranda and discussions within the Executive Branch leading up to the formulation of an official position. *United States v. Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004). However, "[t]he deliberative process privilege may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). Likewise, "[t]he work-product privilege may be overcome only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Hobley v. Burge*, 433 F.3d 946, 949-50 (7th Cir. 2006) (citations and quotations omitted).

The Government may also withhold information subject to the "law enforcement investigatory privilege," which provides protection for ongoing criminal investigations. *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126 (7th Cir. 1997). However, "[t]he law enforcement investigatory privilege is not absolute. It can be overridden in appropriate cases by the need for the privileged materials." *Id.* at 1125. The balancing of the need of the litigant who is seeking privileged investigative materials against the harm to the Government if the privilege is lifted is committed to the discretion of the district judge. *Id.* Finally, the informant's privilege allows the Government to conceal the identity of its informants, unless the defendants show that the identity of the informant is essential to a balanced measure of the issues and the fair administration of justice. *United States v. Herrero*, 893 F.2d 1512, 1525 (7th Cir. 1990); *Dole v.*

*Local 1942, Int'l Bhd. Of Elec. Workers, AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989).

The Government may not, however, withhold or delay producing material simply because it is "impractical." In its response brief, the Government states that it has delayed producing taped statements of civilian witnesses to law enforcement and certain law enforcement witness material because they are "impractical" to redact. (R. 215, Gov. Resp. at 7, 8.) The Court orders the Government to produce this information subject to the appropriate redactions for privilege as described in this opinion.

## V.  Conclusion

This Court always uses its best efforts to insure that each criminal defendant receives fair treatment in the criminal justice system. This Court's efforts, if anything, will be even more vigilant in view of the contemplated decision of the Department of Justice to invoke the intricate and complex federal death penalty process. While this Court is pleased that the Government has already begun producing certain documents—even going back to reduce some of the redactions—the Government has not gone far enough under the USAM, the rules of evidence, Seventh Circuit law, and this Court's rulings herein. Accordingly, the Government must promptly file a bill of particulars as to each defendant and produce mitigating and aggravating factors and other *Brady* material on or before June 30, 2006, so that it may be used in defense counsels' arguments against pursuit of the death penalty to both the United States Attorney and the Department of Justice. The Court again advises the Government to redact only information necessary to maintain the privileges laid out here. While the Court prefers the Government and the defendants resolve outstanding discovery matters amongst themselves, this Court will not rule out an *in camera* review of any withheld documents if necessary. Defendants' motions for a

bill of particulars and pre-authorization discovery are granted in part and denied in part consistent with this opinion. (R. 154, 155, 162-166, 193, 194, 202, 204, 213, 215, 225.)

ENTERED: *[signature]*

Judge Ruben Castillo
United States District Court

Dated: June 7, 2006