


# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>FERNANDO DELATORRE, also known as )<br>"Fern," Fern-dog," and "Fernwood," )<br>BOLIVAR BENABE, also known as "Jap," )<br>JUAN JUAREZ, also known as "Ghost," )<br>JULIAN SALAZAR, also known as "Mando," )<br>"Comrade," "Conrad," Cuz," and "Cuzzo," )<br>MIGUEL MARTINEZ, also known as "Big )<br>Mike" and "Mizzy," MARIANO MORALES, )<br>also known as "Mar," ARTURO BARBOSA, )<br>also known as "Chipmunk," HAROLD )<br>CROWDER, also known as "H-Man," )<br>MIGUEL RODRIGUEZ, also known as )<br>"Mental" and "Mento," STEVEN PEREZ, also )<br>known as "Frantic" and "Big Frantic," BRIAN )<br>HERNANDEZ, LIONEL LECHUGA, ROMEL )<br>HANDLEY, also known as "Romellie," )<br>CHRISTIAN GUZMAN, also known as )<br>"Mousey," AKEEM HORTON, and STEVEN )<br>SUSINKA, )<br>)<br>Defendants. ) | No. 03 CR 90<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Defendant Bolivar Benabe ("Benabe") moves this Court to suppress all property seized from his home at 4035 North Sacramento, Chicago, Illinois, and all further evidence derived therefrom and all testimony relating thereto, on the grounds that the information in the application and affidavit for the search warrant was impermissibly "stale", and thus did not establish probable cause. (R. 383, Benabe Mot. to Suppress at 1.) For the reasons that follow, Benabe's motion is denied.

## FACTS

On September 27, 2005, Bureau of Alcohol, Tobacco, and Firearms Special Agent Peter J. Vukovich ("Vukovich") submitted a 39-page Application and Affidavit for Search Warrant ("Affidavit") to Magistrate Judge Jeffrey Cole for Benabe's basement apartment at 4035 North Sacramento. The Affidavit sought authorization to seize:

> a. Books, records, notes, ledgers, and other records relating to the Insane Deuces street gang, including, but not limited to, gang indicia, membership lists, nickname lists, phone numbers, gang hierarchy, gang laws, lists of firearms in the gang's possession, lists of money in the gang's possession or expended on behalf of the gang, and other gang documentation.
>
> b. Items of personal property indicating membership in the Insane Deuces, including, but not limited to: clothing bearing black and green colors or other symbols of the organization; and documents bearing gang-related graffiti.
>
> c. Photographs, including still photos, negatives, video tapes, film, undeveloped film and the contents therein, and/or slides, containing images of co-conspirators and gang members, with or without assets and/or illegal contraband.
>
> d. Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises that is the subject of this warrant, including, but not limited to, canceled mail, deeds, leases, titles, registration information, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, tax documentation, identification cards, immigration documentation, birth certificates, and keys.
>
> e. Computer hard drives, Compact Discs, Floppy Disks, and DVD's, memory sticks which may contain any of the above-described information.

(R. 383, Benabe Mot. to Suppress, Ex. 2, Affidavit ¶ 15.)

In the Affidavit, Vukovich stated that based on his "training and experience in firearms

2

and gang-related investigations," he knew that gang members often keep the following in their residences: (1) name and phone lists of others in their organization; (2) ledgers that contain membership lists, gang hierarchy, gang member attendance at meetings, dues paid to the organization by individual gang members, lists of the amount and types of firearms currently possessed by the gang as a whole, and the total amount of money that the gang has at its disposal for purchasing illegal contraband such as firearms and drugs; and (3) photographs of themselves together, places of importance to the organization, and their assets. (*Id.* ¶ 11.) Vukovich explained that law enforcement has already recovered such items from residences of various other Insane Deuces gang members. (*Id.* ¶ 12.) Furthermore, the Affidavit stated that based upon Vukovich's knowledge of this investigation, he knew that gang members communicate with each other through computers and e-mail, and use computers to keep gang-related documents. A cooperating witness specifically mentioned a gang meeting in 1999 or 2002 where Benabe's co-defendant, Mariano Morales, showed gang members how to communicate with each other and recruit people into the Insane Deuces via the computer, and displayed an Insane Deuces website as well as computer photographs and pictures of Insane Deuces emblems and members. (*Id.* ¶ 13.) Finally, Vukovich stated that:

> Based on my training and experience, I know that gang members often keep the above-described documents and items for significant periods of time. Gang members keep these documents and items because the gang is an ongoing enterprise and membership in the gang is for life. In fact, the Insane Deuces bylaws recovered during this investigation make it explicit that gang membership is for life: "Once a member of the Organization, always a member." Gang members also keep these documents and items as a source of pride reflecting their membership in the gang.

(*Id.* ¶ 17.)

In a section relating to Benabe in particular, the Affidavit stated that there was probable cause to believe Benabe was a member of the Insane Deuces and kept the aforementioned material in his apartment because, among other things:

> a. As reflected in the superseding indictment, the grand jury charged that, during the course of the conspiracy, Benabe was the highest ranking member of the Insane Deuces outside of prison and that he was responsible for overseeing the activities of all of the factions of the Insane Deuces.
>
> b. CW1 [cooperating witness] has informed law enforcement officers that Benabe was the ranking Insane Deuces gang member outside of prison from the late 1990s through late 2003. According to CW1, as the ranking Insane Deuces gang member outside of prison, Benabe was responsible for overseeing all of the gang's operations in Northern Illinois.
>
> c. Benabe attended the June 7, 2002 Junior meeting . . . Benabe's voice on the tape has been identified by CW1, who attended and recorded the meeting, by another cooperating gang member who attended the meeting, and by self-identification on the tape.
>
> . . . .
>
> e. Records obtained from the Illinois Department of Corrections ("IDOC") show that Insane Deuces gang member Jorge Carvajal was writing letters to other Insane Deuces gang members regarding Benabe. According to CW1 and other cooperating gang members, Carvajal is the ranking Insane Deuces gang member known as the "Prince." Carvajal was incarcerated from the early 1990s through late 2003. In a letter written by Carvajal and intercepted by IDOC in 1999, Carvajal informed Insane Deuces gang member Brian Torres to contact Benabe regarding Insane Deuces gang issues on the street because Benabe was taking care of things while Carvajal was incarcerated.

(*Id.* ¶ 34.)

On September 27, 2005, Magistrate Judge Cole issued the search warrant for Benabe's apartment. The warrant was executed on September 28, 2005.

4

## ANALYSIS

Before issuing a search warrant, the magistrate judge must determine whether probable cause exists, such that: "(1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will be* on the described premises when the warrant is issued." *United States v. Grubbs*, 547 U.S. 90, 96 (2006) (emphasis in original). The probable cause determination involves a "practical, common-sense decision whether, given all the circumstances set forth . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Gray*, 410 F.3d 338, 344 (7th Cir. 2005) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

This Court must give "considerable weight" to the magistrate's determination, and the magistrate should be overruled only when "the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *United States v. Wiley*, 475 F.3d 908, 915 (7th Cir. 2007) (quoting *United States v. Newsome*, 402 F.3d 780, 782 (7th Cir. 2005)). Even "doubtful cases are to be resolved in favor of upholding the warrant." *United States v. Sleet*, 54 F.3d 303, 306 (7th Cir. 1995) (quoting *United States v. Pless*, 982 F.2d 1118, 1124 (7th Cir. 1992)).

Because the Affidavit did not contain any dates specifically linking Benabe to the Insane Deuces after 2003, Benabe argues that the warrant used to search his home in September 2005 was based on stale information, and thus was invalid. In this case, the magistrate's finding of probable cause for the search warrant was more than reasonable. Magistrates may draw "reasonable inferences about where evidence is likely to be found given the nature of the

evidence and type of offense." *Wiley*, 475 F.3d at 915. Both the nature of the evidence sought from Benabe's home and the type of offense Benabe is charged with support the magistrate's finding of probable cause in this case, even though the Affidavit does not allege any specific inculpatory evidence against Benabe after "late" 2003.[1]

The age of the inculpatory information is only one factor that magistrates consider in making a probable cause determination. *United States v. Spry*, 190 F.3d 829, 836 (7th Cir. 1999). The age factor is not determinative: "if other factors indicate that the information is reliable . . . the magistrate should not hesitate to issue the warrant." *Id.* (internal citations and quotations omitted). When the affidavit refers to facts that indicate continuous criminal activity, that has been ongoing for years, the passage of time between the last alleged act and the execution of the warrant becomes even less important. *Pless*, 982 F.2d at 1126 (citing *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991)). Given that the criminal activity Benabe is charged with—a racketeering and narcotics conspiracy spanning over 10 years—the passage of time is particularly insignificant. *See United States v. Sims*, 808 F. Supp. 596, 606-07 (N.D. Ill. 1992) (holding that given the alleged ongoing nature of the "Four Corners Hustlers" gang, the passage of one-year's time between when firearm was seen in residence and warrant issued to

---

[1] The parties later determined that Carvajal was released from jail on August 19, 2003, and thus, according to the government's allegations, Benabe would no longer have been the highest ranking Insane Deuces gang member outside of prison on that date. Benabe does not claim that Vukovich's representation of that date as "late 2003" was false or fraudulent, and the August 19, 2003 date does not change this Court's analysis.

search residence did not render the information stale).[2]

The type of evidence sought by the Affidavit and subsequent search warrant also support the magistrate's finding of probable cause. Agent Vukovich testified that the information law enforcement was seeking was the type gang members keep for significant periods of time, and they had found similar information in other gang members' houses. (Vukovich Aff. ¶¶ 12, 17.) The magistrate judge was entitled to rely on the experience of Vukovich in determining whether evidence of a crime was likely to be found at Benabe's residence. *See, e.g., United States v. Watzman*, 486 F.3d 1004, 1008 (7th Cir. 2007).

Therefore, this Court finds that the magistrate judge's determination that the Affidavit established probable cause to search Benabe's apartment was reasonable. Although Benabe was allegedly no longer the ranking member of the Insane Deuces outside of prison by August 19, 2003, the Affidavit provided probable cause to believe that Benabe was still an Insane Deuces member in September 2005—when the search warrant was issued and executed—and that the items sought in the search warrant would be found at Benabe's house at that time. The Affidavit set out that in Vukovich's own experience and knowledge, membership in the gang is for life. The bylaws of the Insane Deuces also state that membership is for life. Moreover, even if there were no probable cause to believe Benabe was still an Insane Deuces member, there was

---

[2] Although Benabe cites *United States v. Wagner* in support of his motion to suppress, that case supports this Court's analysis. In *Wagner*, where the Second Circuit found no probable cause for a search warrant of a defendant's home six weeks after the purchase of a small amount of marijuana, the court noted that if that drug purchase "were in any way linked to the ongoing conspiracy, the warrant would not have been stale." 989 F.2d 69, 74-75 (2d Cir. 1993). The Court explained that "[f]acts of past criminal activity that by themselves are too stale can be sufficient if the affidavit also establishes a pattern of continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence." *Id.* at 75.

probable cause to believe Benabe would have kept some of the items sought—records, documents, computer data and other information about the Insane Deuces—as he had allegedly led the organization for a period of nearly six years and been a member for longer.

Finally, even if this Court had determined that the search warrant was invalid, the evidence seized from Benabe's home pursuant to the warrant would not be suppressed because the executing officers' reliance on the warrant was objectively reasonable; that is, they relied in good faith on the magistrate's determination that probable cause existed for the search. *United States v. Leon*, 468 U.S. 897, 920 (1984). The decision to seek a warrant is *prima facie* evidence that the officer was acting in good faith. *Wiley*, 475 F.3d at 917. Unless Benabe could show that the magistrate "wholly abandoned his judicial role or that the officer's affidavit was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable," an officer cannot be expected to question the magistrate's probable cause determination. *Id.*; *see also Leon*, 468 U.S. at 921. Benabe has failed to satisfy that high standard. The fact that prosecutors were involved in drafting the Affidavit helps rather than hurts the finding that reliance upon the warrant was objectively reasonable. *See, e.g., United States v. Merrit*, 361 F.3d 1005, 1012 (7th Cir. 2004), *vacated on Booker grounds*, 543 U.S. 1099 (2005).

## CONCLUSION

Because the magistrate judge's finding of probable cause and issuance of the search warrant for Benabe's apartment was reasonable, Benabe's motion to suppress (R. 383) is denied.

ENTERED: /s/ Ruben Castillo

Judge Ruben Castillo
United States District Court

Dated: September 4, 2007