**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 03-cr-90-3 |
| | ) | |
| JUAN JUAREZ. | ) | Hon. Steven C. Seeger |
| _____ | ) | |

## MEMORANDUM OPINION AND ORDER

Juan Juarez received a life sentence in 2009 based on his involvement in a violent street gang. He now moves for resentencing under the First Step Act because part of the crime involved the distribution of crack cocaine.

For the following reasons, his motion is denied.

### Background

In May 2006, Defendant Juan Juarez was charged with multiple crimes for his role in the Insane Deuces gang, which plagued the streets of Aurora, Illinois. The charges included racketeering conspiracy (Count One), conspiracy to commit murder in aid of racketeering activity (Count Four), and conspiracy to distribute controlled substances (Count Nine). *See* Second Superseding Indictment (Dckt. No. 227).

Count Nine of the indictment charged Juarez and the other Defendants with conspiring to distribute a specific quantity of drugs. Specifically, Count Nine charged them with conspiring to distribute (1) more than five kilograms of cocaine; (2) more than 50 grams of crack cocaine; and (3) more than 1,000 kilograms of marijuana. *See* Second Superseding Indictment, at 32 (Dckt. No. 227).

Juarez proceeded to a jury trial, which lasted more than two months. *See United States v. Benabe*, 654 F.3d 753, 757 (7th Cir. 2011). In April 2008, the jury convicted Juarez of Counts One, Four, and Nine. *See* Juarez Jury Verdict (Dckt. No. 925); 4/21/08 Order (Dckt. No. 940).

Based on its verdict, the jury necessarily found beyond a reasonable doubt that Juarez was accountable for the distribution of more than 5 kilograms of cocaine, more than 50 grams of crack cocaine, and more than 1,000 kilograms of marijuana. *See* Second Superseding Indictment, at 32 (Dckt. No. 227); Judgment, at 2 (Dckt. No. 1275). Because of those quantities, Juarez faced a mandatory minimum sentence of 10 years, and a maximum sentence of life in prison. *See* 21 U.S.C. § 841(b)(1)(A)(ii), (iii), (vii) (1996); 21 U.S.C. § 846.

On January 21, 2009, Judge Castillo sentenced Juarez to life in prison on both Count One (again, racketeering conspiracy) and Count Nine (drug conspiracy). *See* Judgment, at 2 (Dckt. No. 1275). He also sentenced Juarez to ten years on Count Four (conspiracy to commit murder), to be served concurrently. *Id.*

Juarez now moves for relief under section 404 of the First Step Act. *See* Def.'s Mtn. (Dckt. No. 1969). He requests a new sentence based on recent changes to the statutory sentencing range for crack cocaine.

## Analysis

Section 404(b) of the First Step Act allows "[a] court that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *See* First Step Act, Pub. L. 115-391, 132 Stat. 5194, 5222 (2018).

The Fair Sentencing Act, in turn, "increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year

2

minimum and from 50 grams to 280 grams in respect to the 10-year minimum." *See Dorsey v. United States*, 567 U.S. 260, 269 (2012).

Putting those two statutory pieces together, Congress empowered district courts to change sentences for crack cocaine offenses in certain instances. Based on the changes in the Fair Sentencing Act, the First Step Act "allows district courts to reduce the sentences of criminal defendants who have been convicted of" specific crack cocaine offenses. *See United States v. Hudson*, 967 F.3d 605, 607 (7th Cir. 2020).

"Sentence reduction under § 404 is a two-step inquiry." *United States v. McSwain*, 25 F.4th 533, 537 (7th Cir. 2022). The first question is "whether the defendant is eligible for a sentence reduction." *Hudson*, 967 F.3d at 1610. The second question for the district court is "whether it *should* reduce the sentence." *Id.* (emphasis in original). First can; then should.

When considering step two, "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." *See Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022). For example, district courts may consider "evidence of postsentencing rehabilitation and unrelated Guidelines amendments when raised by the parties." *Id.* at 2402–03; *see also United States v. King*, 40 F.4th 594, 596 (7th Cir. 2022) (noting that *Concepcion* "held that, when substantive changes made by the First Step Act (principally reductions in the authorized ranges for crack-cocaine crimes) entitle a prisoner to be resentenced, the judge may consider everything that would have been pertinent at an original sentencing").

District courts have the power, but not the obligation, to change a sentence for crack cocaine. In the end, it boils down to the exercise of discretion. "[T]he decision whether to reduce a defendant's sentence, and by how much, is a decision committed to the discretion of the

district court." *See McSwain*, 25 F.4th at 537; *see also United States v. Corner*, 967 F.3d 662, 665 (7th Cir. 2020) ("[T]he court's decision is discretionary; section 404(c) makes clear that the court is never required to reduce a sentence under section 404(b).").

A district court must explain its reasons and address the parties' arguments. "[W]hen deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments." *See Concepcion*, 142 S. Ct. at 2404; *see also United States v. Newbern*, 51 F.4th 230, 232–33 (7th Cir. 2022).

Here, the government challenges both steps. It argues that Juarez is not eligible for relief under the First Step Act because "defendant faced a statutory penalty that was unaffected by the Fair Sentencing Act, and defendant's conviction on Count Nine is not a 'covered offense.'" *See* Gov.'s Resp., at 11 (Dckt. No. 1986). And it argues that, even if Juarez is eligible, the Court should decline to change his sentence. *Id.* at 12–14.

The Court addresses each argument in turn.

## I. Eligibility for a Sentence Reduction (Step 1)

The government argues that Juarez is not eligible for relief under the First Step Act for Count Nine, meaning the conviction for conspiracy to distribute controlled substances.[1] The

---

[1] Juarez's motion includes a header that states "Counts One and Nine are 'Covered Offenses.'" *See* Def.'s Mtn., at 3 (Dckt. No. 1969). However, elsewhere Juarez seems to acknowledge that Count One (racketeering conspiracy) is not a covered offense. *See id.* at 2 ("Mr. Juarez is eligible for relief under the [First Step Act] on Counts One and Nine of this indictment *because Count Nine is a covered offense under the [First Step Act]*.") (emphasis added). Nowhere does Juarez substantively argue that Count One is a covered offense. Instead, Juarez argues that he is entitled to be resentenced on Count One because Count Nine is a covered offense. *Id.* So, the Court considers only whether Count Nine is a covered offense.

4

Court disagrees. The government is getting a little ahead of itself, making an argument about step two at step one.

The government agrees that the Fair Sentencing Act modified the statutory sentencing range for Juarez's crack cocaine offense. *Id.* at 11. At the time of the offense, the statutory range for distributing more than 50 grams of crack cocaine was 10 years to life. *Id.* Under that statute, 50 grams or more of crack cocaine was the highest level, meaning that it triggered the highest statutory sentencing range.

The Fair Sentencing Act changed the levels, and raised the ceiling. Today, the statutory range for 50 grams, but less than 280 grams, of crack cocaine is 5 to 40 years. *Id.* Under the current statute, a defendant would have to distribute at least 280 grams of crack cocaine to fall within the statutory range of 10 years to life. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2022).

The government correctly notes that Juarez's sentencing range for the cocaine and marijuana offenses did not change. *See* Gov.'s Resp., at 11 (Dckt. No. 1986). For those two offenses, Juarez faced 10 years to life, and he would face the same statutory range today. *Id.*

As the government sees it, Juarez's distribution conspiracy sentence – which is determined based on the underlying drug offense – was 10 years to life in 2009, and it remains 10 years to life today. *Id.* at 9–11. So, according to the government, his crime of conviction is not a "covered offense" because the Fair Sentencing Act did not change his sentence. *Id.*

Essentially, the government points out that some – but not all – of the drugs in question involved crack cocaine. The conspiracy also involved cocaine and marijuana. And the Fair Sentencing Act did not alter the statutory range for the latter two drugs. So, as the government sees it, Juarez's crime is not a covered offense because he committed conduct sufficient to support that conviction by peddling drugs other than crack cocaine.

5

The government misreads the First Step Act. First, "when a defendant has been sentenced for two crimes, only one of which is covered by the First Step Act, 'a district judge has discretion to revise the entire sentencing package.'" *McSwain*, 25 F.4th at 538 (quoting *United States v. Hible*, 13 F.4th 647, 652 (7th Cir. 2021)).

Second, "conspiracy to traffic crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A)(iii) is a covered offense, even if another object of the conspiracy triggered the same statutory penalty range." *Id.* at 539 (quotation marks omitted). As the Seventh Circuit has noted, most other circuits have concluded that a covered crack offense, even when paired with non-covered offenses, is enough to get past step one of the First Step Act's inquiry. *Id.* at 538 (collecting cases); *see also United States v. Clay*, 50 F.4th 608, 611 (7th Cir. 2022) ("We need not conclusively resolve the question whether a defendant is eligible for First Step Act relief when convicted of a multi-drug conspiracy; we accept the government's concession that these defendants are eligible. We further note that the emerging consensus from our sister circuits is in accord with the government's position."). The "court must ask 'whether the Fair Sentencing Act modified the statutory penalties for petitioner's offense,' not whether the Fair Sentencing Act modified the penalties for petitioner's *specific conduct*." *See United States v. Richardson*, 2023 WL 2058309, at *3 (N.D. Ill. 2023) (emphasis in original) (quoting *Terry v. United States*, 141 S. Ct. 1858, 1862 (2021)).

Here, Juarez's conviction for drug conspiracy involved crack cocaine, a drug that is covered by the Fair Sentencing Act and the First Step Act. That's enough to make him eligible for relief, even though his crime involved other drugs, too (*i.e.*, cocaine and marijuana).

## II.    Discretionary Considerations (Step 2)

This Court can award relief.  The next question is whether it *should*.  Step two requires a district court "to undertake a 'complete review' of [the defendant's] motion and to determine whether he is entitled to relief."  *See United States v. Shaw*, 957 F.3d 734, 743 (7th Cir. 2020) (quoting First Step Act, Pub. L. 115-391, 132 Stat. 5194, 5222 (2018)).

A district court is under no obligation to reduce a defendant's sentence, even if that defendant qualifies for relief.  *See United States v. Fowowe*, 1 F.4th 522, 529 (7th Cir. 2021); *Corner*, 967 F.3d at 665.  But the court must follow certain procedures before it makes its decision.

Specifically, a district court "must begin by recalculating the statutory minimum and maximum that would have applied had §§ 2 and 3 of the Fair Sentencing Act been in effect at the time the movant was originally convicted."  *Fowowe*, 1 F.4th at 529.  And then, the court must calculate how the change to the statutory range affects the Sentencing Guidelines range.  *See Concepcion*, 142 S. Ct. at 2402 n.6 ("[T]he First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense.  That Guidelines range anchors the sentencing proceeding.") (cleaned up).

At that point, the district court is "authorized – as distinct from required – to consider" the "plethora of factors" in 18 U.S.C. § 3553(a) to determine the appropriate new sentence.  *Fowowe*, 1 F.4th at 529.  A district court "may consider all relevant factors when determining whether an eligible defendant merits relief under the First Step Act," including "different statutory penalties, current Guidelines, post-sentencing conduct, and other relevant information about a defendant's history and characteristics."  *Hudson*, 967 F.3d at 611–12.  The entire "menu of legal and factual considerations" is on the table.  *See Fowowe*, 1 F.4th at 529.

In determining whether it *should* reduce Juarez's sentence from life in prison to something else, this Court considers the underlying offense, Juarez's recent submissions, and the factors in 18 U.S.C. § 3553(a). *See Concepcion*, 142 S. Ct. at 2403; *Fowowe*, 1 F.4th at 529. This Court has taken the entire record into account, including everything in the PSR.

### A.      Recalculating the Statutory Range and the Guidelines Range

The Court begins by recalculating the statutory minimum and maximum sentences under the Fair Sentencing Act, and then recalculating the guidelines range based on that change.

In a nutshell, the Court concludes that the Act does not change Juarez's statutory minimum and maximum sentences.  Juarez's statutory range remains 10 years to life because the Fair Sentencing Act did not alter the minimum or maximum ranges for the quantities of cocaine or marijuana that the jury found Juarez accountable for.  Based on a review of Juarez's PSR, the Court concludes that Juarez's recommended sentence under the Sentencing Guidelines remains life in prison, given the totality of the conduct.

Again, Juarez was convicted of conspiring to possess, with the intent to distribute, three separate drugs.  Count Nine charged Juarez with conspiring to possess with the intent to distribute (1) over 5 kilograms of cocaine; (2) over 50 grams of crack cocaine; *and* (3) over 1,000 kilograms of marijuana.  *See* Second Superseding Indictment, at 32 (Dckt. No. 227); Judgment, at 2 (Dckt. No. 1275).

The Fair Sentencing Act affected the statutory penalty for only one of those drugs (crack cocaine).  At the time of Juarez's conviction, a conspiracy conviction based on any *one* of those quantities of drugs resulted in a mandatory minimum sentence of 10 years in prison and a maximum of life in prison.  *See* 21 U.S.C. § 841(b)(1)(A)(ii), (iii), (vii) (1996).

The Fair Sentencing Act changed the statutory penalty for convictions based on crack cocaine, and only crack cocaine. The Act "raised the quantity of applicable drugs that triggered a ten-year mandatory minimum prison term; the Fair Sentencing Act changed the amount from an offense involving fifty grams of crack cocaine under prior federal law to two hundred and eighty grams." *See Fowowe*, 1 F.4th at 525.

The Act did not change the penalty for conspiring to possess with the intent to distribute cocaine or marijuana. Conspiring to distribute both drugs at these quantities *still* triggers a 10-year mandatory minimum prison term with a maximum term of life in prison. *See* 21 U.S.C. § 841(b)(1)(A)(ii), (vii) (2022).

So, Juarez's statutory range is the same. The Fair Sentencing Act did not alter the minimum or maximum ranges for the quantities of cocaine or marijuana that the jury found Juarez accountable for. Reducing the statutory sentence for crack cocaine has no impact when the statutory sentences for cocaine and marijuana remain 10 years to life. *See Richarson*, 2023 WL 2058309, at *6 (noting that "the guideline range . . . would have remained life imprisonment even if the Fair Sentencing Act's amendments had been in place at the time of the offense" because "the jury found Tate guilty of conspiracy to possess with intent to distribute controlled substances and the original sentencing court found by a preponderance of the evidence that 149 kilograms of heroin and 25 kilograms of cocaine base were reasonably foreseeable to Tate; thus making him subject to 21 U.S.C. § 841(a)(1)(A)").

Even if Congress had eliminated the penalty for crack cocaine offenses altogether, the answer would be the same. Juarez's offenses based on cocaine and marijuana would still trigger the mandatory minimum of 10 years, and the maximum of life in prison. The more things change, the more they stay the same.

Both parties seem to acknowledge this point – the government explicitly and Juarez implicitly. *See* Gov.'s Resp., at 11 (Dckt. No. 1986); *see also* Def.'s Mtn., at 8 (Dckt. No. 1969) ("As for the non-covered drug offenses under Count Nine, there is no indication as to the possession of *which* drugs – if any – contributed to the Court's decision to sentence Mr. Juarez to the statutory maximum of life.") (emphasis in original).

After recalculating the statutory minimum and maximum sentences, the next step is to recalculate the advisory range under the guidelines. And once again, the answer lands in the same place. The Sentencing Guidelines recommendation remains the same – life in prison.

At the time of sentencing, Juarez's *actual* total offense level was 54 and his criminal history category was VI. *See* Gov.'s Resp., at 5 & n.4 (Dckt. No. 1986).[2] Because the maximum offense level under the Sentencing Guidelines is 43, Juarez's total offense level was 43. *Id.* at 5 n.4. Juarez's criminal history category was set at VI – also the highest level – "based on [Juarez's] prior convictions for aggravated battery with a firearm and unlawful use of a weapon by a felon." *Id.* at 5.[3]

---

[2] At first, this Court was not able to access the presentence investigation report ("PSR") on the docket, given the age of the case. The docket entry was merely a slipsheet saying "SEALED DOCUMENT NOT AVAILABLE." *See* PSR (Dckt. No. 1299). The PSR was not on CM/ECF, sealed or unsealed. So, this Court reached out to the operations department in the Clerk's Office, and the capable staff checked for the PSR in the vault for sealed documents. The PSR was not in the vault, either, and the staff believed that it was returned to the Probation Department after the appeal. At that point, this Court reached out to Probation, and obtained copies of the PSRs for Juarez and the related defendants. This Court has directed the Clerk's Office to put them on the docket, under seal, given that the Court is relying on them when ruling on an assortment of pending motions. The PSRs now appear at the location of the original docket entries. So, for example, a sealed copy of the PSR for Juarez now appears at docket no. 1299.

[3] Based on a review of the PSR, the Court does not see how the Fair Sentencing Act would change Juarez's criminal history category. Juarez had "two previous adult sentences" both of which were "assigned three criminal history points each." *See* PSR, at 30 (Dckt. No. 1299). Neither offense – aggravated battery with a firearm and unlawful use of a weapon by a felon – involved crack cocaine. *See id.* at 28–30. So, Juarez's criminal history category remains at VI, the highest possible category.

Under the current Sentencing Guidelines, a total offense level of 43 and a criminal history category of VI yields the same answer, a recommended sentence of life imprisonment. *See* U.S.S.G. ch. 5, pt. A (2010).

Juarez does not argue that, after applying the Fair Sentencing Act, his total offense level would fall below 43 (which would be a 12-point drop). And he does not argue that the Fair Sentencing Act changes his criminal history category, which was based on his prior convictions for aggravated battery with a firearm and unlawful use of a weapon by a felon. *See* Gov.'s Resp., at 5 & n.4 (Dckt. No. 1986).

The Court's review of the PSR confirms that Juarez's offense level, and therefore his Sentencing Guidelines range, is unchanged. Even if the offense level for the drug-related crime (Count Nine) hypothetically was lower, it would not matter. The other crime (Count One) yielded the total offense level of 54.

Juarez's PSR determined the combined offense level for Counts One and Nine by applying U.S.S.G. § 3D1.4. *See* PSR, at 25 (Dckt. No. 1299). That provision governs how to calculate the offense level when there is more than one crime. Under the Guidelines, the first step in determining the combined offense level is "taking the offense level applicable to the Group *with the highest offense level*." *See* U.S.S.G. § 3D1.4 (emphasis added).

In Juarez's case, the drug-related crime did not produce the highest offense level. The drug-related crime (Count Nine) produced an offense level of 40. But the other conspiracy crime (Count One) produced an offense level of 49, given that it involved two murders. *See* PSR, at 25 (Dckt. No. 1299). So, the drug-related offense made no difference in the end, because the other conspiracy conviction produced a higher offense level.

Under the Guidelines, a district court must identify the "highest offense level" when there is more than one crime. *See* U.S.S.G. § 3D1.4. And then, the district court must "increas[e] that offense level by the amount indicated" in a table that follows. *Id.* Basically, a district court must add up a number of "units," and they can lead to an increase of five offense levels.

But after a defendant accumulates at least five units, everything else is gravy. When a defendant accumulates more than five *units*, the district court must add five *levels* to the offense level. Anything above and beyond five units makes no difference. The table tops out at an increase of five levels.

Here, Juarez had six units, and the drug-related conduct added only 0.5 units of the six units to determine Juarez's offense-level adjustment. *See* U.S.S.G. § 3D1.4; PSR, at 25 (Dckt. No. 1299). Even if the 0.5 units came off the books, it would make no difference. Juarez would still have 5.5 units. That score leads to a five-level increase in the offense level, because anything above five units leads to a five-level increase. *See* U.S.S.G. § 3D1.4.

Simply put, the Fair Sentencing Act did not reduce Juarez's total offense level under the Sentencing Guidelines. His other criminal conduct produced an offense level of 49, and his total offense level was 54, even without the drug-related conduct. And then his actual offense level was reduced to 43, the maximum offense level under the Sentencing Guidelines.

So, Juarez has not shown that the Fair Sentencing Act would change his benchmark range under the Sentencing Guidelines. And the government has presented evidence that it would remain the same – life in prison.

In sum, the Court concludes that the "benchmark" sentencing range for Juarez's conduct remains unchanged under the Fair Sentencing Act. If the Fair Sentencing Act were in place during his sentencing, Juarez would face the same statutory minimum of 10 years, and the same

statutory maximum of life in prison. His range under the Sentencing Guidelines would not change, either. His recommended range under the Sentencing Guidelines would still be life in prison, even if the Fair Sentencing Act applied. *See* PSR, at 25 (Dckt. No. 1299).

### B. Exercising Discretion to Reduce the Sentence

The next question is whether the Court should exercise its discretion to reduce Juarez's sentence. Based on the record, the Court declines the invitation to lower the sentence. After considering the "plethora of factors" under section 3553(a), the facts do not support a reduced sentence. *See Fowowe*, 1 F.4th at 529. Juarez received the sentence that he deserved.

Juarez requests that the Court reduce his sentence to time served on Counts One, Four, and Nine, "or at least give him a very significant reduction." *See* Def.'s Reply, at 8 (Dckt. No. 2004). He contends that he is entitled to a plenary resentencing on all counts because Count Nine is a covered offense. *See* Def.'s Mtn., at 6 (Dckt. No. 1969).

The motion is largely about the drug-related offense, but it buries the lead. The jury found him guilty for his role in a wide-ranging RICO conspiracy, and that conspiracy involved taking innocent lives. The murders weigh against any reduction of a sentence.

Juarez's involvement in the Insane Deuces gang lasted for years, and he rose to become a top member of the gang. As Judge Castillo found at Juarez's sentencing, what the Insane Deuces "unleashed in Aurora in particular was no different than setting off a bomb or a ball of fire. It was violence for violence['s] sake. It was killing rival gang members without any sense to it just because they were rivals." *See* Sent'g Tr., at 12:4-7 (Dckt. No. 1430).

Judge Castillo noted that Juarez made horrific decisions as a leader of the Insane Deuces. He stated at sentencing: "And probably the most chilling moment for me in particular with regard to Mr. Juarez was when he was informed on the tape recordings that the wrong person had

been killed. And I won't repeat what he said, but it was basically a so what, big deal, things happen." *Id.* at 12:9-13.

The conduct was serious, and then some. In light of the duration and gravity of the crimes, and Juarez's role in the criminality, Juarez faces a steep uphill battle in seeking a reduction in his sentence. He doesn't get very far.

Even on its own terms, the drug-related conduct does not support a lower sentence. Consider, for starters, the significant quantity of drugs that supported Juarez's conspiracy conviction on Count Nine. Again, the jury found that Juarez conspired to distribute sufficient quantities of both cocaine and marijuana to trigger the 10-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). That quantity of drugs supports Juarez's life sentence, even after the changes made by the Fair Sentencing Act.

Juarez shared responsibility for vast amounts of crack cocaine, too. The amount listed in Juarez's presentence investigation report is significantly higher than the amount in the jury verdict. (The jury verdict topped out at more than 50 grams of cocaine. Above that amount, it made no difference at that time.)

According to the PSR, Juarez and his co-conspirators were accountable for over *1.5 kilograms* of crack cocaine. "[T]he narcotics conspiracy, which was both part of the RICO conspiracy and charged as two substantive counts, involved over 150 kilograms of cocaine, *over 1.5 kilograms of crack cocaine* and over 1,000 kilograms of marijuana." *See* PSR, at 19 (Dckt. No. 1299) (emphasis added).

Juarez did not object to this factual conclusion during sentencing. *See* Sent'g Tr., at 3–6 (Dckt. No. 1430) (listing Juarez's objections to the PSR but not mentioning the quantity of crack

cocaine that he was found accountable for by the Probation Department). Judge Castillo then accepted the PSR's sentencing range. *Id.* at 6.

Juarez's motion does not challenge the PSR's factual finding, which Judge Castillo accepted, that he was accountable for 1.5 kilograms of crack cocaine. *See* Def.'s Mtn. (Dckt. No. 1969). One kilogram is equal to 1,000 grams. So the conspiracy involved 1,500 grams of crack cocaine. *See* PSR, at 19 (Dckt. No. 1299).

Before the Fair Sentencing Act, a defendant needed to distribute only 50 grams to qualify for the 10-year mandatory minimum. The Fair Sentencing Act increased the amount of crack cocaine needed to trigger the 10-year mandatory minimum sentence to 280 grams. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2022).

The Fair Sentencing Act raised the roof, but Juarez blew right through it. Juarez and his co-conspirators distributed 1,500 grams of crack cocaine, more than five times the current level (280 grams) required to get a minimum sentence of 10 years and a maximum sentence of life.

Even under the Fair Sentencing Act, Juarez could have qualified for the 10-year mandatory minimum because the conspiracy involved 1,500 grams of crack cocaine, which is far more than the 280 grams under the new standard. *See Richarson*, 2023 WL 2058309, at *4 ("Here, however, the 25 kilograms of cocaine base far exceeds the new threshold, so 21 U.S.C. § 841(a)(1)(A) still applies with a statutory sentencing range of 10 years to life imprisonment."); *see also United States v. Curb*, 2019 WL 2017184, at *3 (N.D. Ill. 2019) ("Had the [First Step Act] been in effect when Curb was sentenced – which is to say, if the threshold for a 5-year mandatory minimum sentence had been 28 grams of crack and the threshold for a 10-year mandatory minimum sentence had been 280 grams – Curb's guideline range would have been no

different. That is because the amount of crack cocaine involved in Curb's offense was far in excess of even the increased quantities necessary to trigger a mandatory minimum sentence.").

The Court recognizes that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), the Sixth Amendment requires that a jury find beyond a reasonable doubt any fact that would increase a statutory maximum or minimum penalty. And here, the jury did not decide whether Juarez distributed more than 280 grams of crack cocaine (*i.e.*, the current standard). The reason was simple – the standard at that time topped out at anything above 50 grams. Pinning down the exact amount above 50 grams made no difference.

Even so, the Court can consider the facts in the PSR when applying the section 3553(a) factors. *See King*, 40 F.4th at 596 (noting that, when applying the Fair Sentencing Act, "the judge may consider everything that would have been pertinent at an original sentencing"). And the Court can consider the facts in the PSR when deciding whether to exercise its discretion and lower the sentence under the First Step Act.

Defendant did not object to the finding in the PSR that the conspiracy involved 1,500 grams of crack cocaine. That amount of crack cocaine weighs heavily, literally and figuratively. When someone is applying for a sentence reduction, that amount of crack cocaine is not exactly a resume builder.

Overall, the nature and circumstances of Juarez's offense do not support resentencing. *See* 18 U.S.C. § 3553(a)(1). It remains "a serious matter to play an important role in a conspiracy selling an illegal substance," and "the evolving view towards crack-cocaine offenses does not change that." *See United States v. Price*, 835 F. App'x 141, 142 (7th Cir. 2021). So, out of the gate, the quantities of drugs that Juarez conspired to sell – including cocaine and

16

marijuana, which still trigger the 10-year minimum penalty – do not support discretionary resentencing.

Next, Juarez seeks a reduction in his sentence based on his rehabilitation in prison and his support from family and friends. Courts may consider evidence of rehabilitation in prison when deciding First Step Act motions. *See Concepcion*, 142 S. Ct. at 2402–03 ("Consistent with this text and structure, district courts deciding First Step Act motions regularly have considered evidence of postsentencing rehabilitation and unrelated Guidelines amendments when raised by the parties.").

Juarez notes that during his incarceration he "has taken a multitude of classes and programs to assist him in being a productive member of the community." *See* Def.'s Mtn., at 9 (Dckt. No. 1969). Juarez has completed his GED and has completed at least 12 courses in prison (as of the date of his motion). *Id.* at 10 (noting that Juarez has completed "Parenting, Drug Education, ACE Forklift Class, Commercial Driver's License Basics, Countries of the World, Anger Management, Applied Parent for UCD Event, Myths of Nutrition and Fitness, Functional Anatomy of the Core, Healing Infections, Stretching, and Yoga" and has taken two more courses). Juarez believes that these courses will make him a more productive member of society if released. *Id.* at 9.

Juarez also points to support from his family and friends. Juarez's motion includes letters from his fiancée, two daughters, mother, sister, friend, and a potential employer who has offered Juarez full-time employment were he to be released from prison. *Id.* at 11. The letters indicate that Juarez's "friends and family are very committed to making sure that if Mr. Juarez is released, he will make the right decisions." *Id.* Juarez's daughters describe their struggles with his incarceration and note that he has been a "great father." *Id.*

17

For his part, Juarez submitted a letter to the Court explaining that he joined the Insane Deuces at age 13. *Id.* at 12. He views joining the gang as "the worst mistake" of his life. *Id.*

Additionally, Juarez points to his relatively good behavior in prison. Again, the Court may consider Juarez's prison disciplinary record when ruling on a First Step Act motion. *See Concepcion*, 142 S. Ct. at 2403 ("[W]hen deciding whether to grant First Step Act motions and in deciding how much to reduce sentences, courts have looked to postsentencing evidence of violence or prison infractions as probative.").

Juarez argues that he "has not had any incidents in over ten years, and those incidents that he received infractions and discipline for did not involve drugs or violence." *See* Def.'s Mtn., at 10 (Dckt. No. 1969). Juarez's good behavior led him to be transferred to a medium-security prison (from a maximum-security prison) closer to home. *Id.*

The government counters that Juarez's rehabilitation in prison must be measured against the serious nature of his offenses. Specifically, in Count Four, "the jury found [Juarez] responsible for the murders of David Lazcano, David Morales, and Erbell Valdez" while a long-standing member of the Insane Deuces gang. *See* Gov.'s Resp., at 12 (Dckt. No. 1986). The government also notes that Juarez's letter to the Court said that he "never considered" himself to be "one of the leaders" of the Insane Deuces yet Juarez "rose to become the fourth highest-ranking member of the Insane Deuces." *Id.* at 14 n.5.

Juarez acknowledges "that he did have a leadership role" in the Insane Deuces gang. *See* Def.'s Reply, at 8 (Dckt. No. 2004). In fact, Juarez admits that at the time he committed his crimes he was "the number four leader" in the Insane Deuces gang. *Id.* at 9. He "was at the top of the leadership of the gang." *Id.* at 10; *see also id.* at 11 ("Mr. Juarez was one of the top leaders of a criminal enterprise in Aurora."). In this role, Juarez participated in a "number of

18

meetings at which the gang members discussed, planned, and organized crimes, including murder." *Id.* at 10.

Juarez also acknowledges that "[h]is conduct led to [the] ultimate horrible outcome from selling dangerous narcotics – murder." *Id.* at 7. As discussed above, the murders committed by the conspiracy were what resulted in Juarez's total offense level of 54 under the Sentencing Guidelines. *See* PSR, at 25 (Dckt. No. 1299).

The Court acknowledges everything that Juarez submitted. Juarez joined the Insane Deuces gang at a young age. The Court also has taken into consideration his continued education, the seven letters of support, and his good conduct while incarcerated (which is positive).

Even so, this Court must weigh these factors against the serious nature of Juarez's offenses of conviction and his leadership role in the Insane Deuces. In doing so, the record fails to support any reduction in his sentence. This Court agrees with Judge Castillo that the nature of Juarez's offenses warrant a lengthy – and within Guidelines – sentence.

Applying the other sentencing factors in 18 U.S.C. § 3553(a) also does not warrant a reduction in Juarez's sentence. Juarez's efforts at rehabilitation in prison cannot overcome the serious nature of his offenses and his role as a leader of a violent criminal enterprise. *See* 18 U.S.C. § 3553(a)(1); *see also United States v. Weaver*, 716 F.3d 439, 442 (7th Cir. 2013) (discussing the increased culpability of "an organizer or leader of a criminal activity"). A lengthy prison sentence – consistent with the statutory and Guidelines ranges – is needed to reflect the seriousness of Juarez's offenses and to promote respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A). As Juarez himself noted, his drug sales not only distributed narcotics, but led to violence, including murder. *See* Def.'s Reply, at 7 (Dckt. No. 2004).

Juarez's life sentence is also necessary to deter future criminal conduct, particularly by setting an example of gang leaders who orchestrate drug sales and commit acts of violence. *Id.* at § 3553(a)(2)(B). And as Judge Castillo noted at sentencing, a lengthy sentence is needed to protect the public from future gang violence. *Id.* at § 3553(a)(2)(C); Sent'g Tr., at 13:20-25 (Dckt. No. 1430) ("And I said yesterday the public is tired of this. Whether it occurs in Chicago, Aurora, Elgin, the public is tired of minority kids being killed by other minorities who some of which don't know what they're doing and some of which who know precisely what they're doing in some ill founded way to obtain status.").

Finally, though the Court appreciates that Juarez has family and friends that support him, the letters are a "routine family-ties argument" that the Court is entitled to reject at sentencing "without discussion." *See United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010). Juarez's desire to be with a supportive family, who may benefit from his presence, is not enough to overcome the serious nature of his crimes and his significant role in the Insane Deuces.[4]

In sum, the Court declines to exercise its discretion under the First Step Act to resentence Juarez. Juarez distributed large quantities of drugs that would justify the same sentence even if he were originally sentenced under the Fair Sentencing Act. The serious nature of his violent offenses, and his leadership role in the Insane Deuces gang, weigh against discretionary

---

[4] Juarez's motion also includes a "final consideration." *See* Def.'s Mtn., at 3 (Dckt. No. 1969). He argues that this Court should consider the COVID-19 situation "[a]s of September 7, 2020" when deciding whether to resentence him under the First Step Act. *Id.* However, Juarez never brought a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). And even if he had, that motion would need to demonstrate that he did not have access to the COVID-19 vaccine or could not benefit from the vaccine. *See United States v. Romero*, 2021 WL 5833978, at *2 (N.D. Ill. 2021) (noting that under Seventh Circuit caselaw "prisoners who have access to a vaccine cannot use the risk of COVID-19 to obtain compassionate release"). So, the Court declines to consider Juarez's argument based on COVID-19.

resentencing. These factors are not overcome by Juarez's continued education, letters of support, and short disciplinary record in prison.

### Conclusion

For the foregoing reasons, Juarez's motion for resentencing under the First Step Act is denied.

Date:   March 2, 2023

Steven C. Seeger
United States District Judge